**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW HAMPSHIRE**

**Daniel Small**

**v.**

Case No. 04-cv-405-PB
Opinion No. 2006 DNH 134

**Bruce Cattell, Warden,**
**New Hampshire State Prison**

**MEMORANDUM AND ORDER**

Daniel Small has filed a petition for a writ of habeas corpus challenging his conviction on over 100 different grounds. Small and Bruce Cattall, Warden of the New Hampshire State Prison, have filed cross-motions for summary judgment. Because I determine that all of Small's claims are all either procedurally barred or without merit, I deny his motion for summary judgment and grant the Warden's cross-motion.

**I.   BACKGROUND**[1]

**A.   The Temporary Protective Order**

In June of 2000, Small served divorce papers on his then-

---

[1]   I have incorporated portions of the Magistrate Judge's February 8, 2005 preliminary review order (Doc. No. 5) in describing the background facts.

wife, Donna.  Shortly thereafter, Donna obtained a Temporary Protective Order ("TPO"), pursuant to N.H. Rev. Stat. Ann. ("RSA") § 173:B, from the Goffstown District Court.  The TPO restricted Small's contact with both Donna and their children. Jurisdiction over the TPO was later transferred to the Hillsborough County Superior Court, where Small's divorce action was pending.

By agreement of the parties, the Hillsborough County Superior Court amended the TPO in November 2000.  The amended order stated that "[t]he domestic violence order entered by the Goffstown District Court on July 11, 2000 shall remain in full force and effect" except with respect to its visitation conditions.  Ex. 4 at 26–29.[2]  A final hearing on the TPO was scheduled to be heard with the divorce action on January 30, 2001.

On January 30, 2001, the Hillsborough County Superior Court

---

[2]  Exhibits ("Ex.") referenced are those attached to Small's Amended Petition for Writ of Habeas Corpus (Doc. No. 9); page references correspond to the electronic filings in the U.S. District Court.  References to the state trial transcript are as follows: "T1" through "T3" are the three volumes of trial transcript from June 5, 7, and 10, 2002; "TM1" and "TM2" are the two volumes of hearing transcript from Small's post-conviction motions heard on March 16, 2004 and April 16, 2004 in Hillsborough County Superior Court.

granted Small's request to continue the hearing for both the TPO and divorce to allow the state to comply with orders directing it to provide tapes and/or transcripts of a 911 dispatch that was relevant to the issuance of the TPO.  Continuing the case to June 26, 2001, the court stated that "[p]ending further order of the Court, the Temporary Domestic Violence orders . . . shall continue in full force and effect."  Ex. 6 at 6-7.  Small's counsel subsequently learned that the evidence from the 911 dispatch had been destroyed in the normal course of events, despite court orders to produce it.  On its own motion, the Hillsborough County Superior Court again continued the TPO and divorce hearing to January 8, 2002.  Id. at 8.

On October 17, 2001, and again a week later, Small was accused of violating the TPO by following Donna's car at close range, pulling in front of Donna's car, gesturing to Donna with his middle finger, and following a car driven by Donna's daughter from a previous marriage at close range with his high beam headlights activated.  These events are described in detail in the New Hampshire Supreme Court's opinion affirming Small's conviction.  See State v. Small, 150 N.H. 457, 458-60 (2004).

At this time, the National Crime Information Center (NCIC)

database had not yet been updated to reflect the continued effect
of the TPO.  Rather, an outdated record showed that the TPO was
scheduled to expire on June 26, 2001, one year from the date it
issued.  On November 6, 2001, after reviewing his files on the
matter, County Attorney Andrew Ouellette caused the NCIC database
to be updated to reflect the continuing effect of the TPO.   On
November 7, 2001, Small was arrested for violating the TPO and
ultimately charged with six counts of felony stalking.

**B.   The Trial**

Small based his defense to the stalking charge in part on
his claim that Ouellette had acted improperly in causing
modifications to be made to the NCIC database.  Prior to and
during his trial, Small sought, but apparently did not receive,
evidence from the state supporting his theory that the NCIC
database had been improperly altered.

Following the state's case in chief, Small moved for a
directed verdict, claiming the state had presented insufficient
evidence to support the charge.  T2 at 23-39.  Specifically, he
argued that: (1) the TPO was not valid in October of 2001; (2)
the state could not prove an essential element of the charge,
namely that he lacked a legitimate purpose to be at the location

where the alleged stalking occurred; and (3) one of the alleged victims in the case, Donna's daughter, was not protected by the TPO even if it was valid because she was not a member of Donna's household.  The trial court denied Small's motion on these grounds but allowed Small's trial counsel, Dawn Caradonna, to argue the issues to the jury.  T2 at 26-39.

At the close of evidence, Small asked the court to instruct the jury that it must find that the TPO remained in effect on the date in question and that it must find that Small lacked a legitimate purpose to be at the location in question.  The trial court declined Small's requests, and again told Small's counsel that she could argue these points to the jury.

On June 10, 2002, a jury convicted Small of six counts of stalking.  He was sentenced to three to six years in the New Hampshire state prison, with an additional three- to six-year suspended sentence.

C.   **The Direct Appeal**

Small, represented by a new counsel, took a direct appeal from his conviction.  The New Hampshire Supreme Court affirmed his conviction in January 2004.  See Small, 150 N.H. at 457.  The court held, in pertinent part, that Small was

-5-

procedurally barred from collaterally challenging the protective order in his criminal proceeding because he had failed to challenge his divorce case.  The New Hampshire Supreme Court denied rehearing on March 25, 2004.

**D.   <u>Post Conviction Motions</u>**

Small filed numerous post-conviction motions in the Hillsborough County Superior Court, including a motion to recuse the trial judge, a motion for discovery, a motion to set aside the verdict, a motion for a new trial based on new evidence, and a motion for services other than counsel.  Among other things, Small alleged judicial misconduct, prosecutorial misconduct, failure to adequately notify him of a jury question or the Court's response thereto, failure to make a record of the jury question and response thereto, falsification and destruction of evidence, witness tampering by both the prosecution and defense counsel, and illegal enhancement of the charges.

In March and April of 2004, the Hillsborough County Superior Court held a hearing on several issues.  Small was given "full and unfettered opportunity, without time constraints, to present anything that he might so desire, as well as the opportunity to call any witnesses that he desired.  He called only one witness,

Lt. Ernest Belletete of the Peterborough Police Department."  Ex. 5 at 37.  Belletete testified that in his initial report he concluded that Small had not violated the TPO, but that he later discovered he was mistaken as to the terms of the TPO and that Small had in fact violated the order.  TM2 at 54.  Small's motions were all denied.  Proceeding *pro se*, he appealed this denial to the New Hampshire Supreme Court, which declined to accept his appeal.  Other post-conviction litigation in the state trial court resulted in two additional *pro se* notices of appeal, neither of which were accepted for consideration by the New Hampshire Supreme Court.

Small subsequently filed another motion for a new trial in the trial court, citing the discovery of new evidence, ineffective assistance of counsel, failure to record the jury instructions, the jury question issues raised previously, a charging document issue, prosecutorial and judicial misconduct, improper penalty enhancement, jury instruction issues, severance of the charges, and sufficiency of the evidence.  His motion was again denied without a hearing on August 28, 2004.  Small did not appeal from this ruling because he believed that the appeal would have been futile.

**E.  <u>Federal Habeas Petition</u>**

Small filed the instant petition in October 2004, raising more than 100 claims, which broadly assert violations of his Fourth, Fifth, Sixth, and Fourteenth Amendment rights.  (Doc. No. 3)  The Magistrate Judge stayed the case in February 2005 pending exhaustion of certain unexhausted claims.  (Doc. No. 5)  Small then returned to state court and filed a motion for a new trial in the superior court.  The motion was unsuccessful and Small appealed to the New Hampshire Supreme Court, which again declined to accept his appeal.

Small filed an amended petition in this court in November 2005, including all of his original habeas claims and 27 additional claims.  (Doc. No. 9)  The Magistrate Judge again determined Small had filed a mixed petition with numerous unexhausted claims and recommended dismissal.  In response, Small waived his unexhausted claims and now proceeds with his exhausted claims.  <u>See</u> Doc. Nos. 10–12.

## II.  <u>STANDARD OF REVIEW</u>

Small's habeas corpus petition is governed by the Antiterrorism and Effective Death Penalty Act ("AEDPA"), 28

U.S.C. § 2254(d)(1)-(2) (1996).  Under AEDPA, I may only grant
habeas relief if I find that the state court adjudication
"resulted in a decision that was contrary to, or involved an
unreasonable application of, clearly established Federal law, as
determined by the Supreme Court of the United States; or was
based on an unreasonable determination of the facts in light of
the evidence presented in the State court proceeding."  Id.  See
also Horton v. Allen, 370 F.3d 75, 79-80 (1st Cir. 2004).

        Under the "contrary to" prong, the petition may be granted
if the state court "arrives at a conclusion opposite to that
reached by [the United States Supreme Court] on a question of law
or if the state court decides a case differently than [the
Supreme] Court has on a set of materially indistinguishable
facts."  Id. at 80 (quoting Williams v. Taylor, 529 U.S. 362,
412-13 (2000)) (internal quotation marks omitted).

        Under the "unreasonable application" prong, the petition may
be granted only if the state court "identifies the correct
governing legal principle from [the Supreme] Court's decisions
but unreasonably applies that principle to the facts of the
prisoner's case."  Horton, 370 F.3d at 80 (quoting Williams, 529
U.S. at 413) (internal quotation marks omitted).  "To be an

unreasonable application of governing law, the state court's determination must not only be incorrect but also be objectively unreasonable."  Id.  "In other words, if the petition presents a close call, it must be rejected, even if the state court was wrong."  Id.  "If, however, the petition presents a federal claim that was raised before the state court but was left unresolved, AEDPA's strict standards do not apply" and the court will review the claim *de novo*.  Id.

### III.  ANALYSIS

Before me today are cross motions for summary judgment on the 69 exhausted claims in Small's amended petition.   These claims fall into four distinct categories:  (1) constitutional violations based on Small's challenge to the validity and duration of the TPO; (2) Sixth Amendment violations allegedly caused by ineffective assistance of counsel; (3) Sixth and Fourteenth Amendment violations allegedly caused by prosecutorial misconduct; and (4) Sixth and Fourteenth Amendment violations allegedly caused by judicial bias or misconduct.  I address each of these claims in turn.

A.     **The Temporary Protective Order**

Small bases 42 of his 69 claims on his contention that the
restraining order he was convicted of violating expired prior to
the date of the charged conduct.  He alleges that the county
attorney, trial judge, several police officers and his own
attorney conspired against him by fabricating an extension of the
TPO in order to establish probable cause for his arrest as
retribution for complaints he had made against several police
officers.  As evidence of this conspiracy, he points to County
Attorney Ouellette's November 2001 act of modifying the NCIC
records to reflect the continuing validity of the TPO as amended
by the Hillsborough County Superior Court.

It is a basic principle of habeas corpus law that "if a
state court decision rests on the adequate and independent state
ground of procedural default, then federal habeas review is
unavailable absent a showing of cause and prejudice or a showing
that a miscarriage of justice will otherwise result."
McCambridge v. Hall, 303 F.3d 24, 34 (1st Cir. 2002).  Procedural
default can only be an adequate and independent basis for
affirming a petitioner's conviction if it is a rule that is
"consistently or regularly applied."  See Gunter v. Maloney, 291

F.3d 74, 79 (1st Cir. 2002).  In order to prove prejudice, a
habeas corpus petitioner must establish a "reasonable
probability" of a different result at trial.  See Strickler v.
Greene, 527 U.S. 263, 289–90 (1999).

On Small's direct appeal of his conviction, the New
Hampshire Supreme Court held that Small was procedurally barred
from collaterally challenging the protective order in his
criminal proceeding because he had never challenged it in the
underlying divorce proceeding.  Small, 150 N.H. at 461.  Small
offers no proof that this rule is inconsistently or irregularly
applied.  See Gunter, 291 F.3d at 79.  As for cause, Small argues
that because the TPO expired by operation of law one year after
its June 26, 2000 issuance, he had no reason to challenge its
duration or expiration until after he was arrested for violating
its terms on November 7, 2001.  Small's contention, however,
conflicts with (1) the Hillsborough County Superior Court's clear
orders continuing the TPO "in full force and effect" pending a
final divorce decree, and (2) Small's own signature on the
amended order acknowledging the same.  See Ex. 4, 6.  Similarly,
Small has failed to demonstrate a reasonable probability of a
different result at trial had he raised this argument there

because the extension of the TPO is clear on the face of the court orders extending it.  <u>See</u> Ex. 4, 6.  Moreover, a notation in an NCIC record has no bearing on the validity or duration of a restraining order, it merely logs the order in a searchable database.   Absent cause or prejudice, I see no miscarriage of justice in denying further review.[3]

For the reasons stated, I grant defendant's motion on all of Small's claims challenging the validity or duration of the restraining order; the state's correction of a clerical error in the NCIC records; and allegations of misconduct against the prosecutor, judge, police officers, and Small's attorney related to the validity of the protective order.  This includes the following claims: 22, 39-49, 51-52, 57-58, 60-62, 66-71, 74, 78-85, 93, 95, 96, 97, 99, 108, 126, 129.

------

[3] Even assuming *arguendo* that Small's claim had been preserved, I still could not review it because "it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions."  <u>Estelle v. McGuire</u>, 502 U.S. 62, 67-68 (1991).  It is beyond dispute that the validity and duration of a restraining order issued by a state court under a state statute are issues of state law.  After a lengthy hearing on Small's post-conviction motion for a new trial, the Hillsborough County Superior Court reviewed the evidence and held as a matter of state law that "the domestic violence restraining order remained in effect by operation of law at the time of the alleged crimes."  Ex. 5 at 40.  The New Hampshire Supreme Court declined to accept Small's appeal.  That ends the matter.

**B.    <u>Ineffective Assistance of Counsel</u>**

Small bases 12 of his claims on his contention that his attorney violated his Sixth and Fourteenth Amendment rights to effective assistance of counsel.  A criminal defendant claiming a Sixth Amendment ineffective assistance violation must establish "(1) that counsel's representation 'fell below an objective standard of reasonableness,' and (2) that counsel's deficient performance prejudiced the defendant."  <u>Roe v. Flores-Ortega</u>, 528 U.S. 470, 476-77 (2000) (quoting <u>Strickland v. Washington</u>, 466 U.S. 668, 688 (1984)).  To show prejudice, Small must establish that there was "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  <u>Strickland</u>, 466 U.S. at 694.  Because Small's claims of ineffective assistance were denied without a hearing by the superior court, I review them *de novo*.

In claims 7, 105, 107, 109, 111, 112, 113 and 117, Small contends his counsel was ineffective because she failed to adhere to his desired trial strategy of charging the state with misconduct, prejudice and retaliatory prosecution, and for failing to present specific evidence to support that theory.  To the extent Caradonna strayed from Small's desired strategy, it

was within her purview as trial counsel to make tactical
judgments about the case.  See Strickland, 466 U.S. at 689.
Tactical trial decisions include not only the broad theory of the
case, but also which witnesses to call and what evidence to
present.  See id.  Accordingly, the following claims fail because
Small cannot show the Caradonna's performance was deficient: 7,
117 (failure to adhere to desired trial strategy); 105, 113
(failure to call particular fact and character witnesses); 107,
109, 112 (failure to publish/present certain evidence); 111
(failure to impeach police officer regarding destruction of 911
tapes).

In claim 114, Small contends Caradonna was ineffective
because she failed to withdraw from the case despite a known
conflict of interest, and that her failure to withdraw denied him
access to a witness.  Small seems to refer to an alleged attempt
by Caradonna to contact Small's daughter indirectly by asking her
own daughter to pass along a note to Small's daughter at the
school they both attend.  Donna Small testified to this effect at
Small's January 2, 2002 sentencing on a prior charge.  Caradonna
denied the allegation and the trial judge found no impropriety.
Ex. 7 at 19.

This claim fails both because Caradonna's actions do not amount to ineffective assistance and Small has failed to show prejudice.  Although Small asserts a violation of his right to conflict-free representation, the conduct he cites does not support his conflict of interest claim.  While it may have been unwise to seek contact with Small's daughter in the manner alleged, it does not give rise to a conflict of interest on Caradonna's part even if Small's claims are true.  Furthermore, to the extent this matter denied Small access to his daughter as a trial witness, as he claims, I see no prejudice because Small has failed to demonstrate that her testimony would have been favorable to his defense.

In claim 119, Small contends that Caradonna was ineffective because she failed to tell him of an unrelated professional conduct complaint against her which was then pending before the New Hampshire Professional Conduct Committee.  The matter Small refers to was unrelated to Small's case and the complaint was dropped shortly after his trial.  It had no bearing on her representation of him.  Therefore, it cannot serve as the basis for an ineffective assistance of counsel claim.

I also grant defendant's motion on claim 37 (performance below minimum standard) and claim 122 (failure to report prosecutor's pre-arrest involvement) because Small has failed to allege facts sufficient to support either claim.

## C.   **Prosecutorial Misconduct**[4]

Small asserts several claims of prosecutorial misconduct, alleging improper destruction of exculpatory 911 tapes, failure to turn over other exculpatory materials, and failure to present a contradictory witness statement to the jury.  To prevail on a claim of prosecutorial misconduct, Small must show a prosecutorial error so severe as to deprive him of a fair trial. See Moreno-Morales v. United States, 334 F.3d 140, 148 (1st Cir. 2003).

In claim 64, Small argues that the prosecutor improperly denied him exculpatory evidence in violation of due process where the police destroyed the tapes of the 911 calls that led to the issuance of the TPO.  It is axiomatic that a criminal defendant has a due process right to request and receive exculpatory evidence that the government possesses.  Olszewski v. Spencer,

---

[4] Claim 63 is completely meritless or too undeveloped for review.

No. 05-1833, 2006 WL 2988662, at *6 (1st Cir. Oct. 20, 2006)

(citing Brady v. Maryland, 373 U.S. 83 (1963)).  In order to

establish a claim that the state violated this constitutional

right by losing or destroying potentially exculpatory evidence,

Small must demonstrate that the state acted in bad faith.

Olszewski, 2006 WL 2988662, at *6 (citing Arizona v. Youngblood,

488 U.S. 51, 58 (1988)).  Here, the superior court judge who

reviewed Small's post-conviction motions concluded that the state

did not act in bad faith when it destroyed the 911 tapes as a

part of its routine practices.  Ex. 5 at 37-38.  I have no reason

to question this finding.[5]

In claims 65 and 72, Small broadly asserts that the

prosecutor denied him due process by failing to turn over other

unspecified exculpatory information, including statements and

notes in police records and the grand jury "evidence packet."  In

order to prove this claim, Small must show (1) that the evidence

at issue is favorable to him because it is either exculpatory or

---

[5]  In any event, Small does not explain how the destroyed
evidence could have been exculpatory.
       I also grant defendant's motion for summary judgment on
claims 103 and 104 alleging judicial misconduct by Justice Barry
with respect to his handling of the missing tapes.  Because the
underlying substantive argument is without merit, these claims of
improper judicial activity also must fail.

impeaching, (2) the State suppressed the evidence either willfully or inadvertently, and (3) prejudice ensued.  <u>Strickler</u>, 527 U.S. at 281-82.  A general objection that the prosecutor failed to hand over exculpatory material, without more, is not sufficient to support this claim.

With respect to most of the police record claims, Small has failed to show that the evidence he sought could be exculpatory or impeaching.  To the extent Small makes this threshold showing with respect to Lt. Belletete's initial mistaken report that Small did not violate the TPO, his claim still fails because he cannot prove prejudice.  This is so even though Small called Lt. Belletete as a witness at his post-conviction hearing and thoroughly questioned him regarding the report and Lt. Belletete's change of opinion.  Small's related claim, that the prosecutor failed to turn over the grand jury "evidence packet," fails because there is no categorical right to grand jury information absent some showing that such material might be exculpatory.  <u>See</u> <u>State v. Silva</u>, 142 N.H. 269, 271-71 (1997). Small has made no such showing.  Accordingly, claims 65 and 72 fail.

In claim 53, Small argues that the prosecutor violated his right to due process by failing to present contradictory witness statements to the jury after Small requested them.  Small appears to be referring to his demand of the prosecutor, during the prosecutor's cross examination of Small, that the prosecutor show the jury an earlier police report.  The prosecutor was under no duty to comply with Small's demands.  Thus, claim 53 fails.

## D.   **Judicial Bias or Misconduct**[6]

In several claims, Small contends that Superior Court Justice Barry violated his Sixth and Fourteenth Amendment rights by serving as his trial judge despite being biased against him. To show a due process violation due to a trial judge's lack of impartiality, Small must prove either that the judge was actually biased against him or that the appearance of bias was sufficient to establish a conclusive presumption of bias.  See, e.g., Bracy v. Gramley, 520 U.S. 899, 904-05 (1997); U.S. v. Lopez, 944 F.2d 33, 37 (1st Cir. 1991).  Justice Barry reviewed Small's allegations of judicial bias and misconduct at Small's post-

---

[6]  Claims 91, 98 and 100 are completely meritless or too undeveloped for review.  In either case, they do not warrant discussion.

conviction motion for a new trial and recusal in March and April 2004 and denied the motions.  As I explain in greater detail below, I conclude that Justice Barry's rulings were neither contrary to, nor unreasonable in light of Supreme Court precedent or the evidence presented.

In claim 88, Small alleges that Justice Barry revealed his prejudice against Small prior to and during trial.  He seems to base this generalized complaint on Justice Barry's rulings on the validity of the restraining order and the propriety of the State's modification of the NCIC records.[7]  "[O]pinions formed by the judge on the basis of facts introduced or events occurring in the course of the current proceedings, or of prior proceedings, do not constitute a basis for a bias or partiality motion unless they display a deep-seated favoritism or antagonism that would make fair judgment impossible."  Liteky v. U.S., 510 U.S. 540, 555 (1994).  Small has failed to make such a showing here.

In claim 89 and 90, Small claims that Justice Barry's acquaintance with one of the state's witnesses and alleged

---

[7]  Arguably, this claim is barred here, as are all of Small's claims challenging the validity of the TPO and NCIC modification.  See supra.

victims caused him to be bias against Small.  Specifically, Small
complains of Justice Barry's alleged 20-year friendship with
police officer Thomas Thibeault.  I disagree with Small and
reject these claims.  Small misconstrues both the alleged
relationship and the nature of Thibeault's involvement in this
case.  As for the relationship, it was a bare acquaintance from
20 years prior, when Justice Barry knew Thibeault as an office
boy at the Union leader while Justice Barry's private law firm
represented the newspaper.  Ex. 5 at 38-39.  Justice Barry
explained this in both his post-conviction order denying Small's
motion to recuse on this basis and in a letter to the Committee
on Judicial Conduct.  As Justice Barry noted, "'such innocuous
and isolated contact does not form the basis upon which a
reasonable person would question the impartiality of the judge.'"
Ex. 5 at 39 (quoting State v. Whittey, 149 N.H. 463, 466 (2003)).
Furthermore, contrary to Small's assertion, Thibeault was not a
witness in the stalking case upon which he bases his habeas
petition, but rather the victim in a previous criminal
threatening case arising from an incident when Thibeault
responded to a complaint by Donna Small.  Ex. 5 at 38-39, T1 24-
25.  For the reasons stated, I conclude that Justice Barry's

-22-

denial of Small's motion to recuse for bias was proper.

In claim 86, Small complains that Justice Barry denied him a fair trial and due process by failing to record a jury question during deliberations and his answer thereto.  This claims fails because the burden was on Small to request that such jury question be preserved.  See State v. Bergmann, 135 N.H. 97, 99 (1991).  Small has failed to show that he requested the now-desired record.[8]

Claim 92, alleging an excessive sentence, also fails.  The sentence Small received was not the kind of "grossly disproportionate" sentence that warrants habeas corpus relief.  See Lockyer v. Andrade, 538 U.S. 63, 71-72 (2003) (holding state court imposition of two consecutive 25-year to life sentences for "third strike" convictions on two counts of petty theft did not violate AEDPA standard).

## IV.  CONCLUSION

For the reasons stated, I grant defendant's motion for

---

[8]  Small is barred from transforming this argument into an ineffective assistance of counsel claim because this court already dismissed that claim as unexhausted.  See Doc. No. 10 at 6 (discussing claim No. 116).

summary judgment (Doc. No. 19) on all claims, deny Small's amended motion for summary judgment (Doc. No. 20), and deny Small's amended habeas corpus petition (Doc. No. 9).

SO ORDERED.

/s/Paul Barbadoro
Paul Barbadoro
United States District Judge

November 28, 2006

cc:  Daniel Small, pro se
     Nicholas Cort, Esq.